The STATE of Ohio, Appellee,

v.

REDDICK, Appellant.

[Cite as *State v. Reddick* (1996), 113 Ohio App.3d 788.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006266.

Decided Sept. 4, 1996.

*Gregory A. White*, Lorain County Prosecuting Attorney, and *D. Chris Cook*, Assistant Prosecuting Attorney, for appellee.

*Rothgery & Associates* and *Joel D. Fritz*, for appellant.

---

SLABY, Judge.

This cause comes before the court upon the appeal of Drayton Reddick from the judgment of the Lorain County Court of Common Pleas, Juvenile Division, allowing the state of Ohio to amend the count of unauthorized use of a motor vehicle to that of robbery, after the juvenile admitted the original charge during an adjudication hearing. The trial court transferred him for prosecution as an adult and denied his motion to dismiss charges in the indictment on the grounds of double jeopardy. Drayton Reddick was tried and convicted of assault, in violation of R.C. 2903.13(A), and robbery, in violation of R.C. 2911.02(A). We reverse.

The facts of the case are uncontroverted. In November 1994, Drayton Reddick waived his right to be represented by counsel and appeared before a juvenile division referee for an adjudicatory hearing on three cases. He voluntarily

entered an admission to the count of assault, a misdemeanor of the first degree, and to the second count, unauthorized use of a motor vehicle, a felony of the fourth degree. Following these admissions, the referee continued the hearing to determine whether Drayton Reddick admitted or denied the allegations in the two remaining cases before proceeding with the disposition of all three cases.

Before the referee completed the remaining cases, the prosecutor returned to the hearing room, interrupted the proceedings, and asked the court to enter procedural denials in the case at issue. The referee pointed out that Drayton Reddick had already admitted the allegations. Following an administrative conference, the prosecutor asserted that he wished to amend the charge of unauthorized use of a motor vehicle to that of robbery. Subsequently, the referee continued all matters for disposition before the trial court and assigned counsel for Drayton Reddick.

In mid-December, the trial court addressed Drayton Reddick's argument that jeopardy attached when he admitted to the allegations and, therefore, the state's actions in this matter constituted double jeopardy. During the proceedings, the referee testified that he had adjudicated Drayton Reddick as a delinquent. Nonetheless, the trial court determined that the referee had made no finding of delinquency because he had not checked the required box on the report form. The trial court found that since an adjudication had not been made, double jeopardy had not attached. The trial court then withdrew the admissions entered by Drayton Reddick and entered the procedural denial. The trial court allowed the state to amend the count of unauthorized use of a motor vehicle to robbery.

Pursuant to Juv.R. 30 and following a hearing on amenability to reform, the trial court transferred this matter to the general division of the court of common pleas, where Drayton Reddick was tried as an adult. He was convicted of assault and robbery. Drayton Reddick appeals and asserts a single assignment of error:

## ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of appellant, and in violation of appellant's right not to be twice put in jeopardy conferred by Article I, Section 10 of the Constitution of the State of Ohio, and the Fifth Amendment to the Constitution of the United States as applied in the Fourteenth Amendment to the United States [Constitution], when it denied appellant's motion to dismiss charges in the indictment."

The United States Supreme Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It "is written in terms of potential or risk of *trial* and conviction." (Emphasis *sic.*) *Breed v. Jones* (1975), 421 U.S. 519, 532, 95 S.Ct.

1779, 1787, 44 L.Ed.2d 346, 357, quoting *Price v. Georgia* (1970), 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300, 305. Because of this focus on the risk of trial and conviction, the guarantee against double jeopardy ensures an individual that he will not be forced to endure the personal strain, expense and psychological burdens of a criminal trial more than once for the same offense. *Breed v. Jones,* 421 U.S. at 530, 95 S.Ct. at 1786, 44 L.Ed.2d at 355.

The key determination, then, becomes one of ascertaining when jeopardy attaches. Applying the principles of double jeopardy to juvenile proceedings, the Supreme Court in *Breed* concluded that the juvenile was placed in jeopardy at the adjudicatory hearing, which was designed to determine whether a juvenile has committed a criminal act. *Id.* at 531, 95 S.Ct. at 1786–1787, 44 L.Ed.2d at 357. Jeopardy attached "when the Juvenile Court, as the trier of facts, began to hear evidence." *Id.*

For a juvenile, the risk of trial and conviction is heightened when there is the danger that a second trial will not be in the juvenile court but, rather, in an adult court. Recognizing the great significance to a juvenile of facing charges in an adult court, the *Breed* court addressed the constitutional protection against a second trial in the context of youths who are transferred from juvenile to adult courts. The court acknowledged that not all juveniles can benefit from the special programs of the juvenile system and that the juvenile court system relied on flexibility and informality to achieve its goals. *Id.* at 535, 95 S.Ct. at 1788–1789, 44 L.Ed.2d at 359. Nonetheless, the court reasserted the fundamental prohibition against double jeopardy in the context of transfer hearings for those unable to benefit from the juvenile system's special programs.

More specifically, the court referred to the requirement that transfer hearings be held prior to adjudicatory hearings. "We require only that * * * a State determine whether it wants to treat a juvenile within the juvenile court system *before* entering upon a proceeding that may result in an adjudication that he has violated a criminal law." (Emphasis added.) *Id.* at 537–538, 95 S.Ct. at 1790, 44 L.Ed.2d at 360. In an accompanying footnote, the court noted that prior to transfer, states could require substantial evidence that a juvenile committed the offense, "so long as the showing required is not made in an adjudicatory proceeding." *Id.* at 538, 95 S.Ct. at 1790, 44 L.Ed.2d at 360, fn. 18. The court recognized an exception only in a case where the state could not have reasonably secured the information necessary for the transfer before the adjudicatory hearing. *Id.* at 539, 95 S.Ct. at 1790, 44 L.Ed.2d at 361, fn. 20.

The court also addressed the dilemma confronting the juvenile who faces the possibility of transfer after an adjudicatory hearing. If the juvenile appears uncooperative, "he runs the risk of an adverse adjudication, as well as of an unfavorable dispositional recommendation." *Id.* at 540, 95 S.Ct. at 1791, 44

L.Ed.2d at 362. On the other hand, if the juvenile is cooperative, "he runs the risk of prejudicing his chances in adult court if transfer is ordered." *Id.* Mindful of fundamental fairness, the court regarded such a situation as contrary to the desired character of adjudicatory hearings. *Id.*

The facts in the present case suggest that the state intended to treat Drayton Reddick within the juvenile system right up to the time of the adjudicatory hearing. During the pretrial hearing, the state met with Drayton Reddick and his mother, discussed his decision not to be represented by counsel, and learned that he intended to admit the allegations of assault and unauthorized use of a motor vehicle. At no time did the state discuss transferring Drayton Reddick to adult court or changing the charge of unauthorized use of a motor vehicle to robbery.

The state then informally discussed Drayton Reddick's case with the referee and probation officer. During their meeting, the state characterized his likely punishment as a slap on the wrist, but at no time discussed transferring him to adult court or changing the charge of unauthorized use of a motor vehicle to robbery.

A short time later, the prosecutor directed the referee to proceed with the adjudicatory hearing and, again, did not discuss the possibility of transferring Drayton Reddick to adult court or changing the charge of unauthorized use of a motor vehicle to robbery. The prosecutor was not present during the first few minutes of the adjudicatory hearing. After Drayton Reddick admitted the allegations in the case at issue and after the referee had noted his admissions, the prosecutor returned to the hearing room and announced his intention to amend the original charge of unauthorized use of a motor vehicle to robbery and to move to transfer the case to the adult court.

Despite the referee's sworn testimony that he adjudicated Drayton Reddick delinquent, the state contends that he was not adjudicated delinquent because the referee only took a plea, heard no evidence, and failed to make a finding of delinquency by checking the appropriate box on the report form. The state further argues that since the court speaks only through its journal entry, and the entry is silent as to the adjudication, no adjudication was made.

Drayton Reddick argues that jeopardy attached as soon as the adjudicatory hearing began. The referee testified that as soon as Drayton Reddick admitted the allegations set forth in the complaint, no additional evidence was necessary and he adjudicated him delinquent. Juv.R. 29(D)(2) indicates that the court may, but is not required to, "hear testimony, review documents, or make further inquiry." Juv.R. 29(F)(2)(a) also indicates that if a juvenile admits the allegations of the complaint, the court may proceed directly from adjudication to disposition.

Applying the principles set forth in *Breed v. Jones*, it appears that this court does not have to determine whether an adjudication was actually completed. There is no question that an adjudicatory hearing began and the referee took all of the evidence he was required to take, given Drayton Reddick's admission to the allegations of the complaint. There is no suggestion that the state acquired information learned during the adjudicatory hearing in order to transfer Drayton Reddick to adult court. Therefore, the state did not meet the requirement set forth in *Breed* that it make the transfer decision prior to an adjudicatory hearing.

Because the state failed to decide to transfer him in a timely manner, Drayton Reddick's liberty was placed at risk when the court proceeded with the adjudicatory hearing. For the foregoing reasons the trial court erred by not granting the motion to dismiss and not finding jeopardy attached as to the case at issue.

The judgment of the trial court is, therefore, reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., concurs.

BAIRD, J., concurs in judgment only.