*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0322P (6th Cir.)
File Name: 00a0322p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DENVER ROBERTSON,
    *Petitioner-Appellant,*

        *v.*

JOHN MORGAN, Warden,
    *Respondent-Appellee.*

No. 98-4150

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-00167—John M. Manos, District Judge.

Argued: April 27, 2000

Decided and Filed: September 14, 2000

Before: GUY, BOGGS, and SUHRHEINRICH, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Mark D. McGraw, PERK & MILLER,
Cleveland, Ohio, for Appellant. Todd R. Marti, OFFICE OF
THE ATTORNEY GENERAL, CORRECTIONS
LITIGATION SECTION, Columbus, Ohio, for Appellee.
**ON BRIEF:** Mark D. McGraw, PERK & MILLER,
Cleveland, Ohio, for Appellant. Todd R. Marti, OFFICE OF

THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  Denver Robertson, Dante Pester, and Roscoe Woodberry attacked Daniel Finley in Cleveland, Ohio in the early morning of October 2, 1992.  After exchanging a few words with Finley, who happened to be an off-duty corrections officer with the Cuyahoga County Sheriff's Department, Pester "sickled" him (struck his neck) with his forearm.  According to the facts as found by the Ohio state courts, Robertson and Woodberry joined Pester in punching and kicking Finley until he lay unconscious on the ground.  Robertson then took a pager, a marijuana joint, and a wallet containing about $60 from Finley's person.  The three attackers fled into a nearby alley where they split the money three ways and smoked the joint.  When Finley did not move, Pester and Robertson returned to where he lay while Woodberry went to change his shoes and call 911 before all three fled the scene.

Severe head injuries sustained in the attack kept Finley in a coma at the hospital's trauma center for 10 or 11 days. Even after emerging from the coma, Finley had abnormal eye movements, abnormal reflexes, partial left-side paralysis, impaired speech, and poor balance.  Finley checked out of the trauma center in mid-October, but he remained in the hospital's head injury rehabilitation unit until March 1993. Shortly after the attack on Finley, the police began receiving anonymous phone calls inquiring as to his condition.  On suspicion that the calls were from Finley's attackers, police officers told one caller that Finley was going to die.  The next day Woodberry called the police and confessed his involvement in the attack.  The police arrested him shortly thereafter, along with Pester and Robertson.  Woodberry and Pester pled guilty to felonious assault and received sentences of eight to fifteen and five to fifteen years, respectively.

## I

Prosecutors filed a complaint against Robertson, who was 17 when he participated in the attack, in Cuyahoga County Juvenile Court on November 19, 1992, charging him with felonious assault. At a December 1 arraignment and hearing before Referee Novak, Robertson admitted having unlawfully and knowingly caused serious physical harm, and was adjudicated delinquent and sentenced to six months' probation. On December 23, the State of Ohio timely filed an objection to the referee's suggested disposition, and Judge Cotner vacated the sentence, leaving the adjudication of delinquency in place, but ordering the case to be reset before the referee for reconsideration of the disposition. For reasons not in the record, such reconsideration apparently never took place.

Instead, upon his release from the hospital in March 1993, Finley told police he was missing his pager as well as a gasoline credit card, silver dollar, and cash from his wallet as a result of the October attack. According to the prosecution, this additional information precipitated a new complaint dated March 16, 1993, charging Robertson in juvenile court with delinquency because of aggravated robbery. According to other testimony, Finley's sister had told Detective Mishic about the missing gasoline credit card shortly after the attack. Other family members had told Mishic that Finley's pager was missing. Mishic himself testified that he contacted British Petroleum for the credit card receipts and discussed the apparent theft with juvenile court prosecutors the previous fall, but that they elected not to pursue it.

On May 25, 1993, Judge Corrigan held an amenability hearing to decide whether Robertson would be referred for trial as an adult on the new complaint. Robertson's probation officer testified that he had been a good student, had no substantiated chemical dependency, had a supportive family environment, only exhibited violent behavior once while on probation (he hit Woodberry over the head with a bottle in a fight), and that he made a favorable impression on his teacher

and detention home social worker. The officer further testified that Robertson expressed regret for the offense, adjusted well to probation, and that he thought there was a reasonable chance Robertson could be rehabilitated through the juvenile system. A Cleveland police detective testified that the police department had no prior file on Robertson, and that Robertson had come into the police station voluntarily to give his statement and was sorry for what had happened. Robertson's detention home social worker testified that he was a model inmate, received regular visits from his family, and would be amenable to juvenile rehabilitation. Corrigan nonetheless transferred the case for adult adjudication, noting that Robertson was nearly 18 when the crime was committed, that his performance in school was not stellar while on probation, and that the crime he was charged with committing was very violent.

The Cuyahoga County Grand Jury returned a one-count indictment against Robertson in July of 1993, charging him with aggravated robbery. A jury convicted him for that crime in June 1994. Having exhausted his state court appeals, Robertson seeks habeas relief. In his habeas petition, Robertson does not deny his participation in the criminal activity charged, but chiefly contests his dual adjudication as unconstitutional double jeopardy and his adjudication as an adult as a decision without sufficient record evidence to support it. We find no merit in either line of Robertson's argument, and we will therefore affirm the district court's judgment denying the habeas petition.

## II

In the appeal of an habeas corpus decision, legal conclusions are reviewed *de novo* and findings of fact are reviewed for clear error. *See DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir. 1998). Amenability to trial as an adult is a determination that involves the legal significance of facts and is reviewed *de novo* in this court. *See Kent v. United States*, 383 U.S. 541 (1966).

enough in the record to make such a decision reasonable, and thus not unconstitutional.

## VI

Double jeopardy can be a concern if a defendant is adjudicated once for an offense at the juvenile level and again as an adult for the same offense. That did not happen here. The elements comprising the offenses of felonious assault and aggravated robbery in Ohio are distinct. The amenability issue was only litigated once, and there was sufficient evidence in the record to support binding over Robertson for adjudication as an adult. For these reasons, the judgment of the district court denying defendant's petition for habeas relief is AFFIRMED.

probation, because Robertson was not yet serving that sentence.

Robertson argues that the district court did not meaningfully review the state court decision, because it only passed on the procedural regularity of the state proceeding. He asserts that the testimony of the probation officer and social worker would persuade "any reasonable reviewer that [he] was amenable to rehabilitation within the juvenile system," especially since he had never been treated by the juvenile system previously. Further, Robertson contends that the following language indicates insufficient support for the decision to bind him over for adult adjudication:

> The court finds after a full investigation, including a mental and physical examination of said child made by a duly qualified person(s), and after full consideration of the child's prior juvenile record, efforts previously made to treat and rehabilitate the child, the child's family environment, the child's school record, and other matters of evidence, that there are reasonable grounds to believe that the child herein is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children.

The only evidence on Robertson's juvenile record is that this was his first offense. There had thus been no previous efforts to rehabilitate him. There was also some positive evidence about his family environment and school record. This language thus does seem a bit formulaic. In an accomplice murder case where the juvenile had a more checkered background than Robertson's, one court has granted habeas relief based on this kind of generalized finding. *See Patton v. Toy*, 867 F. Supp. 356, 361 (D.S.C. 1994). Still, as the State of Ohio observes, Robertson faces a heavy burden in rebutting the juvenile court judge's findings of fact. The question is whether, taking as accurate the facts found, they were enough to provide reasonable support for binding Robertson over for adult adjudication. While Robertson's record does not compel adjudicating him as an adult, we hold that there is

### III

Robertson's first objection to his trial is that he was adjudicated as a juvenile and an adult for the same incident, which he claims is not a permissible outcome under Ohio state law. However, the case Robertson relies on to support this argument, *In re Bolden*, 306 N.E.2d 166 (Ohio Ct. App. 1973), does not apply to his circumstances. In that case, the juvenile court judge ordered separate and incompatible dispositions for a series of related assaults committed by one youth. On appeal, the state appellate court held that multiple acts of delinquency only "permit one disposition common to all the complaints and findings of delinquency." *Id.* at 168. The earlier disposition in Robertson's case was vacated, so no conflicting dispositions arose from this incident.

Still, Robertson's claim raises the question whether, once a delinquency determination has been made, a juvenile may be later deemed amenable for adult adjudication for a separate offense arising from the same incident. We hold that the Double Jeopardy Clause does not bar such a proceeding. Letting the prosecution try twice the issue of amenability for adult prosecution might (assuming jeopardy attaches to amenability determinations) violate the Double Jeopardy Clause's prohibition on relitigating, but that is not what we have here. Nor, as explained below, has Robertson been tried twice for the same offense. Therefore, these double jeopardy concerns do not taint Robertson's conviction.

Under Ohio law, an adult adjudication may follow juvenile proceedings for the same offense, so long as the prior juvenile proceedings are limited to determining the juvenile's amenability to transfer for adult adjudication and do not decide the juvenile's guilt. *See Laswell v. Frey*, 45 F.3d 1011 (6th Cir. 1995) (holding that a juvenile arraignment hearing was not an adjudication to which jeopardy attached where the court discussed neither the nature of the offense nor the voluntariness of the plea). Because Robertson was tried for different offenses at the juvenile and adult levels, the concern addressed in *Laswell* is not presented here.

Robertson further argues that adjudicating an individual as an adult on charges stemming from an incident for which the individual has already been adjudicated delinquent in juvenile court constitutes double jeopardy, even if ordinarily it would be possible to try a defendant for separate offenses. Formerly, Ohio law required a finding of delinquency based on a full investigation of the facts before transferring a juvenile for trial as an adult. This court struck down that procedure for violating the Double Jeopardy Clause. *See Sims v. Engle*, 619 F.2d 598 (6th Cir. 1980) (holding that it was double jeopardy to adjudge a juvenile as delinquent on armed robbery charges, bind him over for adult proceedings, and charge him for murder, because the juvenile court already acted as a trier of fact); s*ee also Sellers v. Morris*, 840 F.2d 352 (6th Cir. 1988) (remanding to determine whether an earlier juvenile proceeding was an amenability hearing or an adjudication as delinquent, implying that the latter would raise a double jeopardy bar to further proceedings). Here, although Robertson had been found delinquent on one offense, there was only an amenability hearing on the second offense before his adjudication as an adult. Thus, the *Sims* problem did not infect Robertson's trial.

**IV**

As previous state courts in Ohio have found, jeopardy attaches to a juvenile proceeding that puts an offender's liberty at risk, so a subsequent adjudication *based on the same crime* is barred by the constitutional prohibition against double jeopardy. *See State v. Penrod*, 577 N.E.2d 424, 426 (Ohio Ct. App. 1989) (dismissing on double jeopardy grounds charges against a juvenile after transferring for adult adjudication where those charges duplicated ones previously adjudicated in juvenile court). The *Penrod* court reasoned that "[t]he juvenile's liberty was placed at risk . . . when the court proceeded to determine issues" in the juvenile court proceeding. *Ibid*; *see also Breed v. Jones*, 421 U.S. 521 (1975) (upholding grant of writ of habeas corpus on double jeopardy grounds to a juvenile who was adjudicated a delinquent on a robbery charge, transferred to adult court and

property while he was still in the hospital, it could have confirmed prior to Robertson's December adjudication that a theft had also occurred. While there is no guarantee that pursuing that information would have led to useful testimony from Robertson's accomplices earlier, the complete failure to pursue such testimony is not the kind of due diligence that excuses subsequent prosecution. *See State v. Tolbert*, 573 N.E.2d 673 (Ohio 1991); *United States v. Walker*, 546 F. Supp. 805 (D. Hawaii 1982), *aff'd*, 707 F.2d 391 (9th Cir. 1983); *United States v. Barker*, 553 F.3d 1013, 1022-23 (6th Cir. 1977); *Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997); *But see United States v. DeClue*, 899 F.2d 1465, 1469 (6th Cir. 1990) (holding that the government had used due diligence in seeking a tax indictment where the defendant's refusal to cooperate hampered the earlier investigation).

**V**

Finally, Robertson complains of procedural flaws in Ohio's amenability determination procedure that he claims render it unconstitutional, and he challenges the sufficiency of the evidence in the record to support trying him as an adult. This court has previously held Ohio's amenability determination procedures to be constitutional. *See Deel v. Jago*, 967 F.2d 1079, 1088-91 (6th Cir. 1992). As for the sufficiency of the evidence, the juvenile court judge found that Robertson did poorly in school while on probation, was almost 18 when the attack occurred, and committed a crime that was very violent in nature. The judge also determined that the safety of the community might require Robertson's confinement beyond age 21. These facts lent support to his May 25, 1993 transfer order, even though the judge seemed to ignore the favorable testimony of Robertson's probation officer and social worker. Nor do these findings contradict those of the juvenile court judge who earlier placed Robertson on probation; that judge simply focused on different facts. For instance, this crime was Robertson's first offense, Robertson had been an honor student in school, and he came from a supportive home environment. And of course the juvenile court in December could not consider Robertson's school record while on

where the second prosecution requires the relitigation of factual issues already resolved by the first." *Brown*, 432 U.S. at 166-67 n.6. However, the circumstance contemplated in *Brown* under which successive prosecution would be barred was when there had been an earlier conviction for a lesser included offense. And as already discussed, that did not happen here.

### C. The Due Diligence Exception

Even if the facts of this prosecution would otherwise establish double jeopardy, the state argues, and the lower courts agreed, that it is saved by the due diligence exception. Under that doctrine, there is an exception to double jeopardy "where the State is unable to proceed on the more serious charge at the outset because additional facts . . . have not been discovered despite the exercise of due diligence." *Id.* at 169 n.7. Robertson contends that the State of Ohio was not diligent here since the police detective abandoned his investigation of the theft on the direction of the juvenile court prosecutor before Robertson's adjudication as delinquent.

We do not reach the due diligence issue, because no double jeopardy exception is needed here. However, we are not impressed with the purported diligence on the state's part. The state contends that the evidence necessary to prove theft did not become available until after Robertson's felonious assault adjudication, because the victim did not confirm the articles he lost until leaving the hospital in March 1993, and Robertson's accomplices did not testify to seeing him empty Finley's pockets after the assault until March 1993. The district court agreed that "[t]he facts necessary to prosecute Robertson were unconfirmed by the victim until March of 1993." Likewise, the Ohio state court found that "the police had no witnesses who could specifically link Robertson to the theft until March 1993 when Pester told police he saw Robertson going through Finley's pockets."

However true, these facts were not undiscoverable before March 1993. Had the police followed up the leads given by Finley's family members, or talked to Finley about missing

prosecuted there on the same charge, because jeopardy had attached at the juvenile adjudication); *State v. Reddick*, 682 N.E.2d 38 (Ohio Ct. App. 1996) (interpreting *Breed v. Jones* to require that a juvenile court make a transfer decision before conducting an adjudicatory hearing because such a hearing places the juvenile's liberty at risk and double jeopardy precludes further adjudication).

### A. Double Jeopardy

Robertson contends that his dual proceedings resemble those condemned in *Penrod*. He argues that felonious assault is a lesser included offense of aggravated robbery. If this were true, sequential prosecution of the offenses would violate Fifth Amendment double jeopardy principles. Ohio state courts have determined that felonious assault is not a lesser included offense of aggravated robbery. *See State v. Bumphus*, 372 N.E. 2d 1357 (Ohio Ct. App. 1976). The state claims that its courts' analysis of the relationship between robbery and assault binds this court. *See Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998) (holding that this court must defer to state supreme court unless it has applied federal law unreasonably). However, the state mistakes the deference given to state court interpretations of federal statutes with that given to state court interpretations of federal constitutional law. A state court's determination of whether offenses are the same for double jeopardy purposes is not subject to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Pryor v. Rose*, 724 F.2d 525 (6th Cir. 1984).

To determine whether one charge is a lesser included offense of another, this court looks to "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). In proscribing felonious assault, Ohio Revised Code § 2903.11 reads: "No person shall knowingly . . . [c]ause serious physical harm to another . . . ." In proscribing aggravated robbery, Ohio Revised Code § 2911.01 reads: "No person, in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense, shall do any of the

following: . . . (3) Inflict, or attempt to inflict, serious physical harm on another." By a default rule in state law, the "recklessness" standard of culpability applies to the "serious physical harm" element of the aggravated robbery offense. *See* OHIO REV. CODE § 2901.21(B); *State v. Crawford*, 461 N.E.2d 312, 315 (Ohio Ct. App. 1983); *State v. McSwain*, 607 N.E.2d 929, 932-33 (Ohio Ct. App. 1992). Because felonious assault contains the element of knowledge in causing physical harm and aggravated robbery contains the element of theft, each offense required proof of an element the other did not. We therefore agree with the district court that no double jeopardy violation occurred.

Robertson argues that in other cases where no double jeopardy was found, the elements of the crime were more distinct, or else there was a separation in time between the offenses charged so that they were clearly different criminal acts. *See, e.g., State v. Preston*, 491 N.E.2d 685 (Ohio 1986) (finding no lesser included offense where defendant held up a store thus committing aggravated robbery, then shot the store clerk in a struggle thus committing felonious assault). He points to a case where his situation was discussed hypothetically:

> The petitioner argues that because the aggravated robbery charge against him involved the infliction of serious physical harm, felonious assault in this instance is a lesser included offense of aggravated robbery. *Perhaps this would be true if the charges had arisen out of a single act by the defendant*; the prosecution for felonious assault would be prohibited under § Ohio Rev. Code 2941.25, arguably, because the act of felonious assault would necessarily result from the commission of the aggravated robbery.

*Jones v. Baker*, Nos. 93-3589/3625, 1994 WL 464191, at *4 (6th Cir. Aug. 26, 1994) (emphasis added). But the hypothetical in *Jones* notwithstanding, the Supreme Court has repudiated the former notion that double jeopardy protections require subsequent prosecutions to satisfy a "same conduct"

test. *See Grady v. Corbin*, 495 U.S. 508 (1990), *overruled by United States v. Dixon*, 509 U.S. 688, 704 (1993).

Thus the key question remains whether felonious assault is a lesser included offense of aggravated robbery. To answer that, we must ask whether the Ohio legislature intended that it be separately punishable if charged at the same time as aggravated robbery. *See Brown v. Ohio*, 432 U.S. 161, 166-67 (1977). If Robertson could not be convicted of both offenses in the same prosecution, then he cannot be convicted of them both in consecutive prosecutions. Ohio courts, to which we do defer on this point, have held that a defendant may be convicted of both aggravated robbery and felonious assault, because they are not "allied offenses of similar import" under the state's multiple-charges statute. *State v. Allen*, 685 N.E.2d 1304, 1305-06 (Ohio Ct. App. 1996). Because the offenses are separately punishable, Robertson's earlier crime was not a lesser included offense of his latter one.

### B. Relitigation

Even though the distinct knowledge element of felonious assault and distinct theft element of aggravated robbery eliminate double jeopardy concerns under the *Blockburger* rule, Robertson argues that his violent act was effectively tried twice here—with far more serious consequences for him the second time around. In finding Robertson amenable to adult adjudication, the judge relied upon the same violent act for which the referee formerly recommended probation. Discovery of the theft, Robertson argues, did nothing to change the seriousness of his act of violence. Yet his violent act, and not the theft, motivated the decision to try him as an adult—even though the violence was fully taken into consideration at the time of the December delinquency adjudication. Relitigation concerns can preclude a second trial on a related offense even where the elements are technically distinct. "Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances