DECISION AND JOURNAL ENTRY
The Juvenile Division of the Summit County Court of Common Pleas found Chance Rice ("Appellant") to be a delinquent child by reason of child endangering, in violation of R.C. 2919.22(A). She has appealed from this adjudication.
She has asserted that the trial court erred by denying her motion for acquittal on the charges of child endangering and felonious assault, in violation of R.C. 2903.11(A). She has also asserted that the finding that she was delinquent by reason of child endangering was not supported by the evidence. Both assignments of error are overruled, and the judgment of the trial court is affirmed.
 I
At about four-thirty in the afternoon on a Friday, Appellant brought her one-month-old child, Ashawnte, to the emergency room complaining of "irritability and fever" and "poor [oral] intake." As part of the history, taken from Appellant and her mother, Deborah Rice ("Grandmother"), the attending physician noted that Grandmother was concerned Thursday when "child refused bottle 
kept screaming all day today."
Ashawnte was running a fever when she arrived at Children's Hospital, and was noticeably irritable. Because of the fever, a complete septic work-up was ordered. When the work-up indicated that Ashawnte had "profoundly low hemoglobin," the medical team began to look for acute blood loss. After a full work up, the team discovered that Ashawnte had between one and four skull fractures, and that her liver and spleen were torn. She required a transfusion to save her life.
Dr. Daryl Steiner, Medical Director of the Care Center,[1] diagnosed Ashawnte as a "victim of battered child syndrome, which is a form of physical abuse in which a child receives multiple blunt blows, blunt trauma to the body." According to Dr. Steiner, the injuries were inflicted by "at least four separate blows, four separate traumatic events to the child." He further indicated that, "[t]hese injuries were a result of non-accidental means." He reached the conclusion that these injuries were "non-accidental, inflicted" injuries based on (1) the inability of a one month old infant to move and injure herself and (2) the lack of an accident history that was "clearly recorded, very clearly provided, very clearly remembered by the care providers" that would account for the injuries. Both Dr. Steiner and Dr. Maria Ramundo, attending pediatric emergency at Children's Hospital, and assistant medical director for the Care Center, testified that the injuries were of a nature that they had to have occurred within forty-eight hours, and more likely occurred within twenty-four hours, of her arrival at the hospital.
After the doctors received the initial results of Ashawnte's bloodwork, they told Appellant that Ashawnte was severely anemic and that they were looking for what had caused it. About two hours later, Appellant was told that her child had a fractured skull. Appellant was also told that Summit County Childrens Services Board would be taking custody of both her children because they had been abused. Shortly thereafter, the police began interviewing Appellant. Detective Mychal Brown, of the Akron Police Department, testified that Appellant initially disavowed any knowledge of how Ashawnte might have been injured. When police explained how serious Ashawnte's injuries were, Appellant said that she might have rolled over on Ashawnte while she was asleep.[2] The police agreed with her that rolling on the baby might have caused some of the injuries but would not have caused the skull fractures. Appellant then said that sometimes when she takes Ashawnte out of the sink after her bath Ashawnte accidentally hits her head on the faucet and that "she hit her head hard on the faucet, really hard, two or three times." The police continued to ask her about what might have caused the internal injuries. In response to questioning, Appellant described an incident that occurred on Thursday night when Rice's boyfriend Kelvin Ross held Ashawnte while she was preparing Ashawnte's bottle. While Appellant was in another room and was unable to observe Ross and Ashawnte, she heard "a slap, and she said she went back in the room and the baby was crying." Detective Brown said the police asked, "Did you take the baby away from him or did you call the police? Did you make him leave the home?" Appellant responded that she had not. The police indicated that they told Appellant that one slap still wouldn't account for all of Ashawnte's injuries. According to the police, and audible on the partial tape of the interrogation, Appellant then told them that "somebody's been hitting my baby. I don't know who." On the tape of the interrogation, Appellant can be heard admitting that she lied about rolling over on Ashawnte and about hitting Ashawnte's head on the faucet while bathing her.
Detective Mychal Brown, from the Akron Police Department, testified that Appellant told him "that she was the only one that cared for the baby the past two days." He verified that Appellant was not in school on Thursday and Friday, and that Ashawnte was not in child care during those days. He testified that he "specifically asked her if anyone else had your child within the last two days alone. She stated no." According to Detective Brown, Appellant told him that no one was alone with Ashawnte but Appellant, except for the single occasion on Thursday night when Ross was out of her sight with Ashawnte.
 II Denial of Crim.R. 29 Motion
Appellant has asserted that:
 THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY REFUSING TO GRANT APPELLANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE PROSECUTION'S CASE WHERE THE STATE OF THE EVIDENCE, TAKEN IN THE LIGHT MOST FAVORABLE TO THE STATE, COULD NOT FAIL TO PRESENT REASONABLE DOUBT AS TO DEFENDANT-APPELLANT'S GUILT.
The Appellant has challenged the denial of her motion for acquittal at the close of the State's case as to both the child endangering and the felonious assault charges. As an initial matter, we note that Appellant was not found to be a delinquent by reason of felonious assault.[3] Because she was not adjudicated delinquent by reason of committing that offense, the asserted error is moot as to that charge, even if she is correct in her assertion that the decision to deny her motion was erroneous. See State v. Williams (1996),74 Ohio St.3d 569, 576.
With respect to the adjudication of the child endangering charge, Appellant has asserted that the trial court erred by failing to grant her Crim.R. 29 motion for acquittal at the close of the state's case. "The court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * * ." Crim.R. 29(A).[4] By definition, a court evaluating a Crim.R. 29 motion bases its decision on the sufficiency of the evidence to support a conviction. The Ohio Supreme Court has articulated the review of a claim of sufficiency as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. The reviewing court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." State v. Thompkins (1997), 78 Ohio St.3d 380,390. (Cook, J., concurring).
Based on the circumstances in this case, to establish that Appellant was delinquent by reason of child endangering, the State had to demonstrate that Appellant, as the (1) parent of (2) a child under eighteen years of age (3) violated a duty of care and (4) by doing so created a substantial risk to the health or safety of the child. See R.C. 2919.22(A). Her action, or inaction, must have been reckless. State v. McGee (1997), 79 Ohio St.3d 193,195.
Ashawnte's age and Appellant's relationship to her were not challenged. With respect to the remaining elements, our review of the denial of the Crim.R. 29 motion is limited to the evidence that was before the judge at the time the motion was made. At that time, both physicians and Detective Brown had testified. The only portion of Appellant's explanation of the events the court had heard was contained in the medical reports, or was recited by Detective Brown or by the physicians. At the time it denied the Crim.R. 29 motion there was no evidence before the court that Appellant had attempted to obtain medical care for Ashawnte, or even to consult a professional as to whether medical care should have been obtained.
The two physicians testified that Ashawnte was a victim of battered child syndrome. The physicians testified that the injuries had to have been inflicted by four separate blunt traumas, which took place within the previous forty-eight hours, or more likely twenty-four. Dr. Steiner also testified that a one-month old was incapable of independent locomotion.
The investigating officer testified that Appellant told him that she was the sole caregiver during the two previous days, with the exception that Ross was alone with the child for a brief period Thursday night while Appellant prepared a bottle for Ashawnte. Detective Brown also testified that Appellant had heard a noise that concerned her while Ross was alone with the child. When Appellant investigated, Ashawnte was crying. According to Detective Brown, the noise and the crying concerned Appellant enough that she questioned Ross about it but did not take the child away from him, call the police, or make him leave the home.
Based on the medical history, taken from Appellant and Grandmother, Ashawnte had "refused bottle" on Thursday, and "kept screaming all day" on Thursday and Friday.
Based on their factual observation that Ashawnte was not mobile the physicians testified to their rational inference that she could not have been injured without a witness who could provide a history of the injury. From their factual observation of the injuries and Ashawnte's condition on arrival at the hospital, the doctors testified to their rational inference that the injuries must have occurred within the previous forty-eight hours. From the factual testimony that Appellant was continually present with Ashawnte during the forty-eight hour period in which the injuries which had to have been witnessed and must have occurred, aside from the brief period when Ross was alone with Ashawnte, it can be inferred that one or both of them must have witnessed or caused the injuries.
With the exception of a brief absence to prepare a bottle, Appellant was with Ashawnte for the entire forty-eight hour period. Unless the injuries occurred when Appellant was showering or preparing Ashawnte's bottle, Appellant either caused the injuries or witnessed them. If Appellant deliberately caused the life threatening injuries, her actions were in violation of her duty to care for Ashawnte. See State v. Sammons (1979), 58 Ohio St.2d 460, affirming a conviction for endangerment by neglect, even though it might more appropriately have been brought pursuant to R.C. 2919.22(B), prohibiting abuse of a child. If Appellant accidentally caused Ashawnte's injuries, by rolling over on her in bed, for example, and did not immediately seek medical help, that inaction was also a violation of her parental duty to care for Ashawnte. State v. Kamel (1984), 12 Ohio St.3d 306, 309-310. The injuries were life threatening, and thus her reckless failure to seek help for the injuries she caused created a substantial risk to Ashawnte's health.
Based on the testimony before the court at the time of the Crim.R. 29 motion Appellant was briefly separated from Ashawnte on Thursday evening. If the injuries occurred during that brief separation from Ashawnte, Appellant still failed to properly respond to indications her child needed prompt medical attention. For purposes of this review, we accept as true that Ashawnte was "screaming all day" Thursday and Friday and "refused bottle" on Thursday. Even in the absence of the suspicious sound on Thursday night, when Appellant was faced with a screaming one-month-old infant who refused to eat, Appellant had a duty to seek medical care for her daughter. In addition, on Thursday night Appellant heard a suspicious noise that she initially assumed was a slap. When she investigated, Ashawnte was crying, yet she did not take her child away from her boyfriend or make him leave the house. There was no evidence before the court at the time of the Crim.R. 29 motion that Appellant made any effort to seek medical help in response to her child's screaming that began on Wednesday night or early Thursday morning. Nor was there any evidence that she sought medical help or advice about her child's refusal to eat on Thursday. Nor was there any evidence that she sought medical advice after she heard a noise on Thursday night that sounded to her like a slap. According to the evidence presented by the State, Appellant first sought medical assistance late afternoon on Friday, after Ashawnte had been screaming for nearly a day and a half, refusing to eat for at least a day, and close to a day after Appellant hearing a suspicious noise while Ashawnte was being held by her boyfriend.
Assuming the truth of the most favorable evidence presented by the State, and making all inferences in the State's favor, a rational trier of fact could have found beyond a reasonable doubt that Appellant created a substantial risk to Ashawnte's health or safety either by directly injuring her, or by recklessly disregarding all indications that Ashawnte was in need of medical care. Appellant's first assignment of error is overruled.
 Child Endangering Not Supported by the Evidence
Appellant has not clearly stated the basis for this assignment of error. Appellant has asserted that:
 THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE BY FINDING DEFENDANT GUILTY OF THE OFFENSE OF CHILD ENDANGERING WHERE SUCH A CONVICTION IS NOT SUPPORTED BY THE EVIDENCE
After a recitation of seven facts, she has asserted, without argument, that "this adjudication is severely prejudiced by the degree of harm counsel [sic] to the child; that the evidence is not sufficient to sustain a conviction." By this we understand her assignment of error to be that there was not sufficient evidence to support her adjudication as a delinquent child by reason of child endangering.[5] The posture of a sufficiency review is that of assuming the evidence presented by the State to be true, and making all rational inferences from that evidence in favor of the State. We have already done this, based on the evidence presented by the State in its case in chief, and have found that the State presented sufficient evidence to support finding, beyond a reasonable doubt, that Appellant was delinquent by reason of child endangering. Appellant did present evidence, which if believed, established that she did promptly seek medical assistance. She also presented evidence that, if believed, explained how her child could have been injured without her knowledge. None of the State's evidence was withdrawn during Appellant's presentation of her case. The resolution of any apparent conflict between the State's case, and Appellant's case is left to the trier of fact because it is a matter of weight and credibility, not sufficiency. Because of this, the evidence that permitted the State to survive a motion for directed verdict at the conclusion of the State's case is also sufficient to support the final determination that Appellant committed every element of the offense of child endangering. Appellant's second assignment of error is overruled.
 III
Both of Appellant's assignments of error are overruled because each challenges the sufficiency of the evidence. We find the evidence to be sufficient to support her adjudication as a delinquent by reason of child endangering. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
[1] The Care Center is a part of the emergency room that is dedicated to the evaluation of children that have been abused or neglected.
[2] During the State's case, Rice's weight was estimated at 160-170 pounds.
[3] The trial court, in a journal entry dated April 16, 1999, found Chance delinquent by reason of child endangering. The journal entry noted that the count of felonious assault was "Dismissed without prejudice." It is well-established that an action "dismissed without prejudice" permits the plaintiff to re-prosecute the action at a future date.
Juv.R. 29(F) provides that:
 upon the determination of the issues, the court shall do one of the following:
 If the allegations of the complaint were not proved, dismiss the complaint;
 If the allegations of the complaint are admitted or proved, do one of the following:
 Enter an adjudication and proceed forthwith to disposition;
 Enter an adjudication and continue the matter for disposition * * * ;
Postpone entry of adjudication * * * ;
 Dismiss the complaint if dismissal is in the best interest of the child and the community.
The Rules of Juvenile Procedure do not provide for an adjudication of a "dismissal without prejudice" following "an adjudicatory hearing, which was designed to determine whether a juvenile has committed a criminal act." State v. Reddick
(1996), 113 Ohio App.3d 788, 791, citing Breed v. Jones
(1975), 421 U.S. 519, 531, 44 L.Ed.2d 346, 357. Because the trial court did not either (1) enter an adjudication of delinquent by reason of felonious assault or (2) dismiss the complaint pursuant to a finding that dismissal was in the best interest of the child and the community (either of which would indicate that the "allegations of the complaint [were] proved"), this court can only conclude that the trial court dismissed the complaint pursuant to Juv.R. 29(F)(1). SeeState v. Penrod (1989), 62 Ohio App.3d 720, 723. Clearly, the dismissal of the charge of felonious assault after Appellant was subjected to jeopardy acts as a bar to subsequent prosecution on this charge, in the same manner as would an acquittal in a criminal case. See, generally, Penrod, supra.
[4] Rice did not waive her right to appeal this asserted error, even though she put on a defense, and did not renew her motion for acquittal at the close of her defense, because the court, rather than a jury, decided the matter. Dayton v. Rogers (1979),60 Ohio St.2d 162, 163, overruled on other grounds by State v. Lazzarro
(1996), 76 Ohio St.3d 261.
[5] As part of the concluding paragraph for this assignment of error, Appellant has asserted that "When the evidence and adjudication combined with the sentence of commitment to D.Y.S. where only prior offense was truancy are viewed in their totality it is clear that the court lost its way in determining `guilt' based on the elements of the offense * * * and that defendant was denied due process of law." Although "lost its way" is a phrase that is used as part of the description of a manifest weight review, its use in this context is meaningless. A manifest weight review of a determination that an individual committed child endangering does not include a review of the subsequent sentence imposed. Because her error is phrased as one of sufficiency, and the body of her argument does not clearly indicate that she is arguing something else, we review for sufficiency only.