The STATE of Ohio, Appellee,

v.

McSWAIN, Appellant.

[Cite as *State v. McSwain* (1992), 79 Ohio App.3d 600.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60575.

Decided May 18, 1992.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *John F. Corrigan,* Assistant Prosecuting Attorney, for appellee.

*Robert A. Dixon,* for appellant.

DYKE, Judge.

Appellant, John McSwain, was indicted on one count of aggravated robbery with violence and aggravated felony specifications, one count of kidnapping with violence and aggravated felony specifications, and one count of felonious assault with violence and aggravated felony specifications.

Appellant was acquitted of the second and third counts. However, the trial court found appellant guilty of the first count of aggravated robbery, R.C. 2911.01, with specifications:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall * * * (2) Inflict, or attempt to inflict, serious physical harm on another."

Appellant was sentenced to a term of ten to twenty-five years, with ten years being actual.

On the evening of December 15, 1989, at approximately 9:00, Van Groves pulled up to a Dairy Mart in Bedford, Ohio, with his seven-year-old son. It was snowing heavily and he had planned to leave his car on while he ran in for a gallon of milk. But then he noticed two suspicious looking men standing inside the phone booth in the parking lot. One man was tall and wearing a long coat and the other man was shorter. He got back in his car to turn off the engine. When he returned home a few minutes later, he learned that the Video Heaven store right next to the Dairy Mart had just been robbed.

Ethyl Darlene Williams was working alone in the Video Heaven store at 9:00 that night. She testified that appellant had walked into the store and looked at the horror videos for a few moments before asking her where the Eddie Murphy movies were. A second man entered the store at about that time. This man was much taller than the first man and wore a long beige-colored coat. Williams left the counter to point out the Eddie Murphy videos to the first man. At this point she was hit from behind. She screamed. The

taller man shouted for her to quit and hit her across the mouth with his arm. He then threw Williams to the floor and said, "Junior, get the register." From where Williams lay on the floor she could hear someone trying to open the computerized cash register. The taller man grabbed her by the hair and forced her over to the register to open it. He told Williams to sit on the floor in front of the counter. She complied. As the taller man was emptying the cash drawer the shorter man left the store. The taller man then demanded more money from Williams, kicked her in the head and told her not to call the police. As soon as he left, she called the police. She then noticed that her purse was gone.

The police arrived and retrieved her purse from behind the store. It was missing sixty dollars, a coupon saver pouch and an Avon manicure kit. The police followed two sets of footprints in the snow from behind the store to a nearby neighborhood. The tracks ended four houses from appellant's residence. Based upon the proximity of the tracks to his house and the knowledge the police had of prior crimes of a similar nature committed by the appellant, the police included appellant's photo in a group of six to ten other photos to show to Williams that night. Williams identified the appellant from the photo spread.

Williams was treated at the hospital for a sore arm. Several teeth were chipped and she was badly bruised.

Two days later the police obtained a search warrant for appellant's home. They retrieved the coupon saver pouch with personal receipts and family photos belonging to Williams and the Avon manicure kit from appellant's top dresser drawer.

Appellant's testimony is that he went to Video Heaven to rent a movie that evening. When he walked in, he saw the taller man, who he recognized, strike the clerk. Not wanting to be involved and concerned about his probation status, appellant left right away. As he was nearing his house, the man who he saw in Video Heaven pulled up next to him in a car and gave him the coupon saver pouch containing twenty-seven dollars and the nail kit, to keep his mouth shut. Appellant accepted the items and went home.

Appellant appeals from his conviction of aggravated robbery with specifications. He asserts one assignment of error:

## I

"The verdict and judgment below was [*sic*] against the manifest weight of the evidence and insufficient as a matter of law."

Appellant is actually combining two theories into one assignment of error. The first theory is that the verdict was against the manifest weight of the evidence. The second theory is that the evidence was insufficient as a matter of law to sustain a conviction. We will address the second theory first.

■ Appellant argues that there was insufficient proof of "serious physical harm" as required by R.C. 2911.01(A)(2). He also asserts that there was insufficient proof that appellant "knowingly" inflicted the physical harm as an aider and abettor.

The standard of review to determine whether or not the evidence was insufficient to support the conviction was set by the Ohio Supreme Court:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

Given the facts of this case, reviewed in a light most favorable to the prosecution, we find that the rational trier of fact could have found the essential elements of aggravated robbery proven beyond a reasonable doubt.

Appellant's argument that the evidence was insufficient to prove the element of "serious physical harm" is not well taken. R.C. 2901.01(E) defines "serious physical harm":

"(E) 'Serious physical harm to persons' means any of the following:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

■ The evidence showed that Williams was bruised and sore. She had several chipped teeth. She was also kicked in the head, which must have

caused some pain. However, it does not have to be proven that she actually suffered "serious physical harm." The criminal statute prohibiting aggravated robbery requires only that there is an infliction or an "attempt to inflict serious physical harm to another."

The Ohio Supreme Court in *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, found that although serious physical harm did not result from the assault, "to establish this aggravating element of the crime the facts need only demonstrate an *attempt* to inflict any one of the results described in R.C. 2901.01(E)(1)–(5)." *State v. Eley*, at 172, 10 O.O.3d at 341, 383 N.E.2d at 134. In *Eley*, the victim's collar was grabbed and the buttons were ripped off his shirt. He was thrown to the sidewalk and sustained injuries to his head and hip. The court found from this evidence that:

"[A] jury could reasonably conclude, beyond a reasonable doubt, that the assailant *attempted* to inflict whatever harm was necessary to incapacitate Levy. Furthermore, a jury could reasonably find that the attacker would not have stopped short of serious physical harm had the victim failed to let go of the money bag." *State v. Eley*, at 172, 10 O.O.3d at 342, 383 N.E.2d at 134.

From the evidence before the trial court, as trier of fact, it was quite reasonable for the court to conclude that appellant "attempted to inflict whatever harm was necessary to incapacitate" Williams.

The fact that appellant was not the actual attacker of Williams is irrelevant. Under R.C. 2923.03, appellant is liable as an accomplice for the assault on Williams.

"Under R.C. 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense." *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, at paragraph two of the syllabus.

The testimony of Groves and Williams is evidence that appellant aided and abetted the taller man in committing the aggravated robbery. Groves testified to seeing the two men together in the phone booth just prior to the robbery. Williams' testimony indicated that appellant participated in the robbery by initially distracting her then attempting to open the cash register while the other man kept Williams incapacitated.

Appellant's involvement was similar to the conduct of the defendant in *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. Eley's participation in the aggravated robbery of Levy consisted of grabbing the bag of money out of Levy's hands after the first assailant already had Levy on the ground. Once Eley grabbed the bag and fled, the first attacker also ran.

Eley's conviction for aggravated robbery under R.C. 2911.01(A)(2) was affirmed by the Mahoning County Court of Appeals and the Ohio Supreme Court. The Supreme Court noted that "the jury was adequately instructed on the elements of complicity pursuant to R.C. 2923.03 and no specific objection was raised concerning the trial court's explanation of the law." *State v. Eley,* at 170, 10 O.O.3d at 341, 383 N.E.2d at 133.

In addition to aiding and abetting, appellant was also required under R.C. 2923.03 to have acted with the kind of culpability required for the commission of aggravated robbery.

Appellant's second argument under his insufficiency-of-the-evidence theory is an assertion that there was insufficient proof that appellant "knowingly" inflicted the physical harm as an aider or abettor. While the complicity statute does require the same culpability for an accomplice as the principal offender, the appellant is mistaken in arguing that the level of culpability for the attempted infliction of serious physical harm is "knowingly."

R.C. 2911.01, by making reference to the definition of a "theft offense" in R.C. 2913.01, incorporates the "knowingly" standard of culpability from the theft statute. However, this standard applies only to the theft aspect of the offense. The standard applicable to the infliction or attempted infliction of serious physical harm is not specified in the statute. Courts have therefore applied "recklessly" as the standard of culpability for the infliction or attempted infliction of harm aspect of the offense.

Appellant relies on *State v. Bumphus* (1976), 53 Ohio App.2d 171, 7 O.O.3d 244, 372 N.E.2d 1357, out of Huron County, to support his assertion that the standard is "knowingly." *Bumphus* stands for the proposition that "knowingly" is the requisite mental state by reference to the theft statute. But, the court in *Bumphus* continues to state that after the theft section of R.C. 2911.01 is determined, "it is sufficient thereafter to present to the jury the issue of whether the defendant had a deadly weapon or dangerous ordnance on or about his person or under his control. See R.C. 2901.22(E)." The court in *Bumphus* is clearly not applying the "knowingly" standard to the entire aggravated robbery offense, only the theft part of it. After the theft part is determined under the "knowingly" standard, then the other half of the offense can be dealt with. In *Bumphus* the other half of the statute was R.C. 2911.01(A)(1); under our set of facts R.C. 2911.01(A)(2) applies. The "knowingly" standard does not apply to either having a deadly weapon or inflicting serious harm on another.

In *State v. Mabry* (1982), 5 Ohio App.3d 13, 5 OBR 14, 449 N.E.2d 16, this court interpreted the requisite mental state standards for R.C. 2911.01. This court relied on *Bumphus* when it held that the lower court's "instructions

should have included a charge that [the defendant] knowingly assisted others in depriving an owner of his property." *State v. Mabry*, at 16, 5 OBR at 17, 449 N.E.2d at 21. This court did not extend the mental state of "knowingly" . to the element of infliction of serious harm.

The Court of Appeals for Hamilton County dealt specifically with this issue when it held:

"Since R.C. 2911.01(A)(2), aggravated robbery, does not specify any degree of culpability, R.C. 2901.21(B) requires that recklessness be the standard which the prosecution must meet in proving, beyond a reasonable doubt, that the defendant inflicted, or attempted to inflict, serious physical harm on another. However, in proving the theft element of R.C. 2911.01(A)(2) the prosecution must demonstrate, beyond a reasonable doubt, that it was done knowingly." *State v. Crawford* (1983), 10 Ohio App.3d 207, 10 OBR 280, 461 N.E.2d 312, paragraph one of the syllabus.

Appellant's assignment of error, based upon the theory of insufficient evidence to support the element of infliction or attempted infliction of serious physical harm, is overruled.

Appellant also bases his assignment of error on another theory, that the verdict is against the manifest weight of the evidence. The standard of review under the manifest weight theory was articulated in *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, at paragraph three of the syllabus:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

Given the evidence presented by the record it is not at all clear that the court lost its way. It does not appear from the facts of this case that a manifest miscarriage of justice has occurred.

Appellant's assignment of error, based on the theory that the verdict was against the manifest weight, is overruled.

The appellant's conviction of aggravated robbery with specifications is affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY and PARRINO, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.