OPINION
{¶ 1} Defendant-Appellant Kelli Garrett appeals from her convictions and sentences for five counts of aggravated robbery and ten counts of kidnapping, all with firearm specifications.
 {¶ 2} On the afternoon of October 14, 1997 Garrett and her brother Carlos entered Max's Jewelers and Loan in Springfield, pretending to be customers. Suddenly, Carlos pulled out a gun and announced, "This is a holdup." Together Garrett and Carlos herded the three employees into a back room. Garrett held Carlos' gun while he bound the employees with duct tape that the two had brought with them. Garrett took the employees' wallets. Either Garrett or Carlos found a handgun behind the counter, and both were armed from that point.
 {¶ 3} Garrett pointed her gun at the owner's head, at close range, and demanded that he open the safe. She removed merchandise and money from the safe. Garrett and Carlos went through the store removing valuables from their displays and putting them into trash bags, all the while Garrett was screaming that she wanted the bracelets, necklaces, gold chains, and diamond rings. The two stole approximately $250,000 worth of property.
 {¶ 4} During the robbery, customers entered the store. Garrett ordered one of them behind the counter where Carlos held a gun to his head and demanded his money. A couple entered the store with two children and were also forced into the back room. When the five-year-old girl began crying, Garrett stuck her gun in the child's face and threatened to shoot her if she did not shut up. Four other customers had the misfortune to enter the store during the robbery and were also herded into the back room at gunpoint. Several times during the robbery, Garrett begged Carlos to shoot all of the captives so that there would be no eyewitnesses.
 {¶ 5} After Garrett and her brother left, one of the victims called Springfield Police. During the course of the investigation, the police put together a photo spread, from which the victims identified both Garrett and her brother. Warrants were issued, and Garrett was soon arrested.
 {¶ 6} On October 14, 1997 the Clark County Grand Jury indicted both Garrett and her brother with five counts of aggravated robbery and ten counts of kidnapping, all with firearm specifications. Because her brother had not yet been apprehended, Garrett proceeded to trial separately. Following a jury trial, Garrett was convicted as charged of all fifteen counts and specifications. On April 3, 1998 the trial court sentenced Garrett to thirty-nine years of imprisonment and ordered her to pay the costs of the prosecution.
 {¶ 7} Garrett did not appeal from her convictions or sentence. On June 26, 2003 Garrett sought leave from this Court to file a delayed appeal. We granted that request.
 {¶ 8} Garrett's first assignment of error:
 {¶ 9} "The trial court committed plain error and violated miss garrett's due process rights . . . by failing to state and define the appropriate mens rea for the crime of complicity in the jury instructions."
 {¶ 10} Garrett's second assignment of error:
 {¶ 11} "The trial court committed plain error and denied miss garrett due process of law by failing to instruct the jury on the requisite culpable mental state for kidnapping. . . ."
 {¶ 12} Garrett argues in her first assignment of error that the trial court's instruction on complicity was flawed because it omitted the requisite mental state of culpability. Similarly, in her second assignment of error, Garrett claims that the trial court failed to either state or define the appropriate mental state for kidnapping. We begin by pointing out that because Garrett failed to object to the jury instructions, she has waived all but plain error. See, e.g., State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804. In any event, the jury instructions did not omit the mental culpability elements, and there was no plain error.
 {¶ 13} "Under R.C. § 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if . . . he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense." State v. Coleman (1988), 37 Ohio St.3d 286, 289,525 N.E.2d 792. A conviction for aggravated robbery under R.C. §2911.01(A)(1) requires that one act knowingly, while a conviction for kidnapping under R.C. § 2905.01(A)(2) requires that one act purposefully. See, e.g., State v. Swain (1992),79 Ohio App.3d 600, 606, 607 N.E.2d 929; State v. Bumphus (1976),53 Ohio App.2d 171, 174-75, 372 N.E.2d 1357; State v. Maurer (1984),15 Ohio St.3d 239, 270, 473 N.E.2d 768.
 {¶ 14} Jury instructions must be read as a whole. State v.Sanders, 92 Ohio St.3d 245, 264, 2001-Ohio-189, citing State v.Price (1979), 60 Ohio St.3d 136, 141, 398 N.E.2d 772. Here the trial court correctly instructed the jurors that they needed to find that Garrett acted knowingly in order to convict her of aggravated robbery. Additionally, the court correctly instructed the jurors that they needed to find that Garrett acted purposefully in order to convict her of kidnapping. The court also advised the jury that one who aids, helps, or assists another in committing a crime is as guilty of the offense as if she were the principal offender. When the jury instructions in this case are read as a whole, it is clear that the jury was adequately instructed.
 {¶ 15} Moreover, even if the trial court's instructions were in any way deficient, there was no manifest miscarriage of justice. See, e.g., State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144, paragraph three of the syllabus, State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus approved and followed. Given the extensive, unrefuted testimony offered by the State, we cannot conclude that had the jury instructions been any clearer, Garrett would not have been convicted. Accordingly, no plain error exists, and Garrett's first two assignments of error fail.
 {¶ 16} Garrett's third assignment of error:
 {¶ 17} "Miss garrett's right to the effective assistance of counsel . . . was denied when trial counsel failed to object to a complicity instruction that directed the jury to find a defendant guilty without finding that the defendant acted `with the kind of culpability required for the commission of an offense.' R.C. §2923.03(A)(2). Trial counsel also failed to object to the jury instruction regarding the required mens rea for kidnapping."
 {¶ 18} In her third assignment of error, Garrett insists that her trial counsel was ineffective for failing to object to the jury instructions regarding the mental states required for her convictions. We disagree.
 {¶ 19} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. In this case Garrett fails to meet either prong.
 {¶ 20} As discussed in Garrett's first and second assignments of error, the trial court did properly instruct the jury. Therefore, trial counsel could not have been ineffective for failing to object to those instructions. Garrett's third assignment of error is without merit and is overruled.
 {¶ 21} Garrett's fourth assignment of error:
 {¶ 22} "The trial court erred by imposing costs to miss garrett, who was indigent at the time of sentencing."
 {¶ 23} Garrett next argues that the trial court erred by ordering her to pay the court costs incurred during the course of the proceedings below because she was indigent at the time of sentencing.
 {¶ 24} This issue has been decided by the Supreme Court inState v. White, 103 Ohio St.3d 580, 2004-Ohio-5989, which held that court costs may be assessed against an indigent defendant. The assignment is overruled.
 {¶ 25} Garrett's fifth assignment of error:
 {¶ 26} "The trial court erred when it sentenced miss garrett to consecutive prison terms without clear and convincing evidence that the harm caused by miss garrett was so great or unusual that no single prison term would have adequately reflected the seriousness of miss garrett's conduct."
 {¶ 27} Finally, Garrett insists that the trial court erred in sentencing her to consecutive prison terms because the record does not support the court's finding that the harm that she caused was so great or unusual that a single prison term would have demeaned the seriousness of her actions. In support, she continues to blame her brother for the crimes rather than take responsibility for her own actions. Revised Code Section2953.08(G)(2)(a) allows an appellate court to reverse or modify a sentence only if it finds clearly and convincingly that the record does not support consecutive sentences. Such is not the case here.
 {¶ 28} Revised Code Section 2929.14(E)(4)(b) allows a trial court to impose consecutive prison terms "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds [that] [a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." Here the trial court made the necessary findings, which were supported by the record.
 {¶ 29} Garrett argues that only one victim received a physical injury, and that she just took small amounts of property from most of the other victims, none of which qualified as "serious economical harm." Nevertheless, this ignores the cumulative effect of Garrett's crimes. The store owner explained that most of the stolen property was owned by customers and merely being held by Max's Jewelers and Loan, much of which consisted of irreplaceable family heirlooms. Furthermore, the stolen property was valued at approximately $250,000. By anyone's standards, this is "serious economical harm."
 {¶ 30} Garrett also incorrectly states that none of the victims testified about psychological harm. This is simply not true. Detailed information was given by the owner of the store regarding the ongoing emotional scars caused by Garrett's actions and threats of physical harm. Additionally, no one can deny that the five-year-old child suffered serious psychological harm as a result of Garrett's behavior, particularly after Garrett held a gun to the child's head and threatened to shoot her. In fact, the child's aunt described the changes in the child's behavior following her ordeal.
 {¶ 31} Garrett could have faced up to 133 years for her convictions had the court ordered all of her sentences to be served consecutively, yet the court opted to order her to serve only 39 years. Because the court made the required findings to support consecutive sentences, and because those findings were supported by the record, Garrett's fifth assignment of error is overruled.
 {¶ 32} Having overruled all five of Garrett's assignments of error, the judgment of the trial court will be affirmed.
Fain, P.J. and Wolff, J., concur.