[Cite as *State v. Mays*, 2013-Ohio-1952.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2012-05-038 |
| | : | O P I N I O N |
| - vs - | | 5/13/2013 |
| | : | |
| DARRELL MAYS, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011CR0658

D. Vincent Faris, Clermont County Prosecuting Attorney, David H. Hoffmann, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

William F. Oswall, Jr., 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Darrell Mays, Jr., appeals his conviction in the Clermont County Court of Common Pleas for aggravated robbery.  For the reasons discussed below, we affirm appellant's conviction.

{¶ 2} On July 28, 2011, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with a firearm specification.  The charge arose out of

allegations that appellant planned and encouraged the November 6, 2009 robbery of Thorntons gas station in Miami Township, Ohio, provided a handgun to be used during the commission of the robbery by his associates, Steven Rider and Derek Carpenter, and shared in the proceeds obtained from the robbery.

{¶ 3} A jury trial was held in April 2012. At trial, the state sought to prove that appellant was complicit in the commission of the November 6, 2009 aggravated robbery.[1] Rider testified on behalf of the state in exchange for a lesser charge.[2] His testimony revealed that in November 2009, appellant and appellant's girlfriend, Angela Hyden, lived together in an apartment complex "right down the road" from Thorntons gas station. Rider explained he often "hung out" with appellant and Carpenter at appellant's home, and on the evening of November 5, 2009, he, appellant, Carpenter, Hyden, and a friend named "Demetri" were in appellant's apartment "drinking, smoking weed, and partying."

{¶ 4} Rider further testified that he did not know who planned the robbery, but on the night the robbery occurred, Rider saw Carpenter exit appellant's bedroom looking "flustered." Appellant walked by Carpenter and told him "not to puss out." Rider was then told by Carpenter of the plan to rob Thorntons gas station.

{¶ 5} Rider testified that later in the evening, he again heard appellant tell Carpenter that "if he [Carpenter] was going to do it he needed not to puss out. He needed to just go and get it done." Carpenter then went into appellant's bedroom and retrieved from a closet a gun owned by Hyden. Rider testified that although the gun was owned by Hyden, appellant

---

1. "The clear and unambiguous language of R.C. 2923.03(F) states that a charge of complicity may be stated in terms of the complicity statute, R.C. 2923.03, or in terms of the principal offense." *State v. Wagers*, 12th Dist. No. CA92-11-231, 1993 WL 369240, *2 (Sept. 20, 1993). *See also State v. Benson*, 12th Dist. No. CA2004-10-254, 2005-Ohio-6549, ¶ 29; *State v. Tumbleson*, 105 Ohio App.3d 693, 697 (12th Dist.1995).

2. In exchange for Rider's cooperation and testimony, the state agreed to amend Rider's original charge of aggravated robbery (a first-degree felony), with a firearm specification, to a charge of robbery (a third-degree felony), with no firearm specification.

"most definitely" controlled the gun, and if people wanted to use or handle the gun they would "usually" ask appellant's permission.

{¶ 6}   Around midnight, Carpenter, Rider, Demetri and another unnamed individual drove to the gas station with the intention of robbing the store, but they abandoned the plan as there were too many customers present.  The group returned to appellant's apartment where they continued partying.  Around 3:00 a.m., Carpenter and Rider left on foot to rob the gas station.   Rider testified that during the robbery, Carpenter held the gun taken from appellant's apartment to the gas station's clerk's head.  After taking money out of two separate cash registers, Carpenter and Rider fled the store and went back to appellant's apartment.  Rider testified that when he and Carpenter got back to appellant's apartment, appellant "kind of looked surprised that we actually did it.  * * * And he kind of looked at us funny when we sat the bag of cash on the bed."  Rider stated that appellant then grabbed the bag of cash, counted the money from the robbery, and divided the money three ways, with appellant getting an "even share."  Rider testified that the day after the robbery, appellant admonished Rider and Carpenter "to make sure [to] keep quiet about it [the robbery]."

{¶ 7}   Detective Robert Bradford of the Miami Township Police Department also testified at trial.  Bradford testified he investigated the robbery at Thorntons, and during the course of his investigation, he spoke with Rider, Carpenter and appellant.  Although Rider had acknowledged appellant's role in "setting up" the robbery, appellant denied any involvement in the robbery.[3]  Appellant claimed that he was "not around" when Rider and

---

3. The following discussion took place between Rider and Bradford regarding appellant's role in planning the robbery:

> DET. BRADFORD:  Tell me.  I already know it.  You know I'm right.  You know where I'm at, right?  I mean, would you at least tell me am I right or wrong?  Was it at Angie's house, and it was her boyfriend, [Mays] that was setting it up?  I don't even - - at least tell me if I'm right or wrong or wrong [sic].  I mean - -
>
> MR. RIDER:  Right.
>
> DET. BRADFORD:  Okay.  That's what I figured.  * * *

Carpenter planned the robbery as he was in the back of the apartment with Hyden. He further claimed that he did not let anyone borrow the gun kept in his and Hyden's apartment, and if the gun had been used, "someone had to steal it." Finally, appellant told Bradford that he did not get any money or proceeds from the robbery.

{¶ 8} Bradford testified that Hyden's gun had been recovered from appellant's apartment. Bradford explained that the gun recovered, a black and silver SCCY Industries 9 mm handgun, did not have any latent prints of value and appeared to have been wiped down. In comparing the gun recovered from appellant's apartment to photographs taken from surveillance video of the robbery, Bradford testified that "I have not found any differences between this gun here [the recovered gun] and that gun that I could see in the video." Bradford did admit, however, that there was no way to positively identify the gun taken from appellant's apartment as the gun in the surveillance video. He further admitted that a number of firearm manufacturers produce black and silver guns that look similar to the weapon taken from appellant's apartment.

{¶ 9} On April 6, 2012, the jury found appellant guilty of complicity to aggravated robbery.[4] Appellant filed a Crim.R. 29(C) motion to set aside the verdict and for judgment of acquittal, which was denied by the trial court on May 8, 2012. Appellant was subsequently sentenced to five years in prison.

{¶ 10} Appellant now appeals, raising three assignments of error. For ease of discussion, appellant's assignments of error will be addressed together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE.

---

4. The jury found appellant guilty of complicity to aggravated robbery without the specification. The record demonstrates that although the trial court instructed the jury on the firearm specification, it inadvertently omitted the firearm specification interrogatory from the verdict form.

{¶ 13} Assignment of Error No. 2:

{¶ 14} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE.

{¶ 17} In his assignments of error, appellant argues the trial court erred by denying his Crim.R. 29(C) motion for acquittal, his conviction was not supported by sufficient evidence, and his conviction was against the manifest weight of the evidence. Specifically, appellant argues the state did not meet its burden in proving appellant was complicit to aggravated robbery as the state's "whole case rested on the testimony of Rider," who provided vague, speculative, and incomplete testimony. Appellant contends that in finding him guilty, the "trier of fact clearly lost its way because Rider was an admitted liar with no credibility."

{¶ 18} Crim.R. 29(C) permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 9 (12th Dist.). "This court reviews a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim." *Id.*; *State v. Clements*, 12th Dist. No. CA2009-11-277, 2010-Ohio-4801, ¶ 17; *State v. Moshos*, 12th Dist. No. CA2009-06-008, 2010-Ohio-735, ¶ 26.

{¶ 19} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Grinstead* at ¶ 10. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v.*

*Paul*, 12th Dist. No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 20} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Furthermore, "[a] unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial." *Id.*, citing *Thompkins* at 389.

{¶ 21} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. No. CA2011-03-008, 2012-Ohio-1896, ¶ 43, citing

*Graham* at ¶ 67. Accordingly, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

{¶ 22} Appellant was convicted of complicity to aggravated robbery in violation of R.C. 2911.01(A)(1), which provides:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶ 23} Ohio's complicity statute, R.C. 2923.03(A)(2), states in pertinent part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." In order to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus. Such intent may be inferred from the circumstances surrounding the crime, including presence, companionship, and conduct before and after the offense is committed. *Id.*; *State v. Mota*, 12th Dist. CA2007-06-082, 2008-Ohio-4163, ¶ 20. Moreover, evidence of aiding and abetting may be shown by either direct or circumstantial evidence. *State v. Salyer*, 12th Dist. No. CA2006-03-039, 2007-Ohio-1659, ¶ 26.

{¶ 24} The culpability required for the "theft offense" element of aggravated robbery is "knowingly." *Id.* at ¶ 20; *State v. McSwain*, 79 Ohio App.3d 600, 606 (8th Dist.1992). A person acts "knowingly" when he is "aware that his conduct will probably cause a certain

result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 25} After reviewing the entire record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for aggravated robbery was supported by the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found the essential elements of complicity to aggravated robbery proven beyond a reasonable doubt.

{¶ 26} The state presented evidence that appellant, Rider, and Carpenter were present in appellant's apartment the night the robbery was planned and committed. Although Rider testified at trial that he did not know who planned the robbery, the jury was entitled to find that appellant knowingly aided and abetted in the robbery of Thorntons gas station by actively supporting and encouraging the robbery, as appellant told Rider and Carpenter "not to puss out" and "to just go and get it done," and by assisting in the robbery, as appellant allowed the gun that he controlled and stored in his apartment to be used in the robbery. Further, the evidence presented at trial demonstrated that appellant knowingly cooperated in the robbery by sharing the proceeds from the robbery and instructing Rider and Carpenter to "keep quiet" about the robbery.

{¶ 27} Appellant contends that evidence offered against him at trial was not credible as the majority of the evidence was presented by Rider, an "admitted liar" who received leniency in the prosecution of his case in exchange for his testimony against appellant. Simply because Rider was offered a plea bargain in exchange for his testimony, the jury was not precluded from finding Rider's testimony credible. "Obviously, if such were the case, the state could never rely on the testimony of accomplices and many criminals would escape prosecution." *State v. Cumberbatch*, 11th Dist. No. 2009-T-0127, 2011-Ohio-1584, ¶ 54. It was for the jury to determine whether all, part of, or none of Rider's testimony was credible as

they were in the best position to observe his demeanor. *State v. Woodward*, 12th Dist. No. CA2011-02-036, 2011-Ohio-6019, ¶ 35. Furthermore, pursuant to R.C. 2923.03(D), the jury was provided with the following instruction regarding the weight to be given to Rider's testimony:

> You have heard testimony from Steven Rider, another person who is accused of the same crime charged in this case, and is said to be an accomplice. An accomplice is one who purposely or knowingly assists, or joins another in the commission of a crime. Whether Mr. Rider was an accomplice and the weight to give his testimony are matters for you to determine from all the facts and circumstances in evidence.
>
> An accomplice may have special motives in testifying, and you should carefully examine an accomplice's testimony and use it with great caution, and view it with grave suspicion.

We must presume that the jury followed the instructions given to it by the trial court. *State v. Martin*, 12th Dist. Nos. CA2002-10-111, CA2002-10-115 & CA2002-10-116, 2003-Ohio-6551, ¶ 24; *State v. Jones*, 90 Ohio St.3d 403, 414 (2000).

{¶ 28} In light of the jury's verdict, it is apparent that the jury found Rider's testimony to be credible and chose to believe Rider's testimony and the state's version of events over appellant's denial of any involvement in the robbery. Given the evidence presented, the jury clearly did not lose its way and create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. Therefore, as appellant's aggravated robbery conviction was not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt and to overcome appellant's Crim.R. 29(C) motion. Accordingly, appellant's first, second, and third assignments of error are overruled.

{¶ 29} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.